DONALD E. KALAL, Plaintiff-Appellee, *v.* GOLDBLATT BROTHERS, INC., Defendant-Appellant.

First District (3rd Division)   No. 76-1103

Opinion filed September 28, 1977.

Clifford A. Harstad, of Chicago, for appellant.

Wexler & Wexler, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This action arises out of the defendant's, Goldblatt Bros., Inc., breach of a written agreement to reupholster a sofa of the plaintiff, Donald E. Kalal. A jury returned a verdict in favor of the plaintiff for $2,500. The trial court entered judgment on that amount, and defendant appeals. Defendant raises several issues for our consideration. All of the issues

contain a common thread: that certain evidence regarding damages sustained by plaintiff was improperly admitted, and that certain instructions relating to the applicable measure of damages were improperly given or refused.

On June 26, 1974, the parties entered into a written contract whereby defendant agreed to upholster plaintiff's sofa in a Salina Persimmon fabric. The price was $466.20, and the estimated time of delivery was six to eight weeks. Defendant's representatives picked up the sofa on June 27.

On August 28, 1974, plaintiff was advised that the original fabric was unavailable and agreed to change to a certain gold fabric. The delivery date was to be on or before September 16. To compensate for the delay, defendant advised plaintiff that it would charge him the original price even though the second fabric was more expensive. Plaintiff again was notified that the selected fabric was unavailable and, on September 18, 1974, sent a telegram to defendant demanding an immediate return of the sofa in its original condition. Upon receipt of this telegram, Mr. Emalfarb, defendant's operating superintendent, telephoned plaintiff and persuaded him to select another fabric. Defendant confirmed this arrangement by letter promising to make delivery within 7 to 14 days after plaintiff's selection was received at its shop. The letter also confirmed Emalfarb's oral promise of a 20% discount off the original price.

On September 23, 1974, plaintiff selected a natural gold fabric. Defendant acknowledged plaintiff's selection in writing and informed plaintiff that the material would be on back order for 30 days. Defendant subsequently encountered several delays in the delivery of this fabric. In November 1974, the sofa was delivered. Upon inspection, plaintiff discovered the sofa had not been covered in a natural gold fabric, but in a different gold. Plaintiff refused to accept delivery and the sofa was returned to defendant.

Plaintiff again demanded a return of the sofa in its original condition. He refused Emalfarb's offer of a 50% discount if he would accept the sofa as is and also declined the suggestion that the sofa would be redone by defendant in the proper fabric. On December 23, 1974, Emalfarb telephoned plaintiff and advised him that the natural gold fabric was in and that the sofa would be delivered by December 31. Plaintiff's wife told him to contact plaintiff's attorney, who subsequently refused Emalfarb's offer.

At trial, plaintiff and his wife offered evidence that originally they had not planned a general remodeling of the living room. Had the first material selected been available, it would have matched the existing decor. The fabric finally chosen did not match and plaintiff expended money to decorate. Plaintiff introduced several exhibits into evidence

itemizing these expenses: $97.13 for upholstering an arm chair to correlate with the sofa; $715.16 for carpeting; $517.65 for draperies and sheers; $48 for removal of the old carpeting; $30 for doors; and $8.16 for a twin bed frame that served as a makeshift sofa. The total cost was $1,705. Plaintiff's wife also testified that the sofa had cost $700 or $800 new when purchased some 15 years previously.

Emalfarb testified that once upholstery work has been started, it is impossible to return a sofa to its original condition. Reupholstery entails stripping the sofa down to the bare frame and re-hand-tying the individual springs. The old covering and unusable padding are completely removed and discarded. As of the date of trial, plaintiff's sofa remained in defendant's possession.

At the outset it should be noted that there is no dispute that defendant, in fact, breached its contract. Defendant's defective performance resulted in a loss to the plaintiff. (See *Town of Thornton v. Winterhoff* (1950), 406 Ill. 113, 92 N.E.2d 163.) Defendant admits as much. We are concerned here with the extent of the loss suffered by plaintiff.

Plaintiff introduced into evidence several exhibits itemizing the amount spent on redecorating and refurbishing the living room. Plaintiff contends that this evidence was properly admitted since it represented expenses incurred in reliance upon defendant's promise to reupholster the sofa in a natural gold fabric. Defendant counters that these items cannot properly be considered as consequential or special damages because to treat them as such would constitute a windfall to the plaintiff and because they were not within the contemplation of the parties at the time the contract was executed.

■■■ As a general rule, damages for breach of contract should place the aggrieved party in the position he would have been in had the contract been performed. (*St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 316 N.E.2d 51; *Anderson v. Long Grove Country Club Estates, Inc.* (1969), 111 Ill. App. 2d 127, 249 N.E.2d 343.) A logical correlative of this rule is the principle that the compensation awarded should not provide the plaintiff with a windfall recovery. (*Bowes v. Saks & Co.* (7th Cir. 1968), 397 F.2d 113.) Where the contract involved the furnishing of goods or services and defendant breaches by defective performance, the measure of damages is the cost of remedying the deficiencies. (*Litwin v. Timbercrest Estates, Inc.* (1976), 37 Ill. App. 3d 956, 347 N.E.2d 378; *Hanavan v. Dye* (1972), 4 Ill. App. 3d 576, 281 N.E.2d 398.) In the present case, the defect could be remedied by the cost of reupholstering the sofa in the proper fabric. Together with compensation for the loss of use of the sofa, as will be developed later in this opinion, plaintiff would be fully reimbursed for defendant's defective performance under its contract. For this reason, we also note that

plaintiff's wife's testimony as to the original cost of the sofa was admitted improperly.

Plaintiff, however, claims that he should be compensated for the cost of redecorating the living room on the theory that these items constitute special or consequential damages. Damages recoverable for breach of contract are limited to those which were reasonably foreseeable and were within the contemplation of the parties at the time the contract was executed. (*Sitnick v. Glazer* (1956), 11 Ill. App. 2d 462, 138 N.E.2d 84; *Bushnell v. Curtis* (1925), 236 Ill. App. 89.) Both plaintiff and his wife testified that at the time the contract with defendant was executed, they had not considered refurbishing the living room. Plaintiff maintains, however, that defendant should have been on notice of the proposed changes to the living room by reason of the fact that the final fabric selected obviously clashed with the existing decor.

■■■ As a general rule, notice to a seller of some probable action on the part of the buyer is not necessarily sufficient to charge the seller with special damages. (See *Flug v. Craft Manufacturing Co.* (1954), 3 Ill. App. 2d 56, 120 N.E.2d 666.) Since the redecorating and new purchases were not within the contemplation of either party at the time the contract was executed and there is no indication in the record that defendant was informed of plaintiff's intentions in this respect, we conclude that the special expenses were not proper elements of damage. Plaintiff's exhibits itemizing these expenses should not have been admitted into evidence.

■■ Defendant next contends that the trial court erred in refusing to give the jury its proposed instruction relating to the measure of damages. The refused instruction would have informed the jury that if it found for the plaintiff on the issue of liability, it could assess the damages as measured by the cost of remedying the defects or deficiencies in the work performed. Since we have indicated previously that this is a proper item of damages, it follows that it was error for the trial court to refuse this instruction.

Defendant also claims error in the giving of the following instruction to the jury:

> "If you decide for the Plaintiff, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from the wrongful conduct of the defendant: Loss of Convenience and Loss of Time."

In his brief, plaintiff concedes the phrase "loss of convenience and loss of time" was an inadvertent mistake and that the instruction was really referring to loss of use. Both sides agree that loss of use, if proved, is a compensable item of damage in this case. (*Krick v. First National Bank* (1972), 8 Ill. App. 3d 663, 290 N.E.2d 661.) The loss of use is generally

114

measured by the reasonable rental value of the property during the deprivation. Since the case must be retried on the issue of damages, we are sure that the instruction will contain the correct phraseology.

■■ Defendant further argues that the trial court erred in refusing to give the following instruction to the jury: "Damages are to be measured as of the date of the performance of the contract, which in this case is the same as the date of the breach." Defendant maintains that the breach did not occur until the sofa was delivered covered in the wrong fabric. We do not agree. The evidence is conclusive that defendant breached its agreement of June 26, 1974, when, after the delivery date had passed, it informed the plaintiff that the fabric chosen was unavailable. The trial court's refusal of this instruction was proper since it did not conform to the facts adduced at trial.

Defendant finally complains that prejudicial error occurred when Emalfarb was asked by counsel for plaintiff whether plaintiff had been billed for the work in question. Defendant objected on the ground that the question violated a motion in limine. Plaintiff's counsel then declined to inquire further. Since the matter is unlikely to recur in the new trial, we consider it unnecessary to consider the argument.

■■ For the reasons stated, the judgment of the circuit court of Cook County in favor of the plaintiff is affirmed. The award of damages is reversed, and the cause is remanded for a new trial on the issue of damages only consistent with the holdings of this opinion.

Affirmed in part; reversed and remanded in part with directions.

JIGANTI and McGILLICUDDY, JJ., concur.