Robert STRADER, Plaintiff,

v.

UNION HALL, INC., Elbert Bagus, and
The Travelers Insurance
Companies, Defendants.*

The TRAVELERS INSURANCE COMPA-
NIES, Third-Party Plaintiff,

v.

UNION HALL, INC., Third-Party
Defendant.

No. 75 C 3524.

United States District Court,
N. D. Illinois, E. D.

April 14, 1980.

* *Editor's Note:* The opinion of the United States District Court, N.D. Oklahoma in *Youngblood v. Solar Excavating, Inc.,* published in the advance sheets at this citation (486 F.Supp. 159), was withdrawn from bound volume publication, because the opinion was vacated.

Harlan M. Gordon, Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy, Cleveland, Ohio, William L. Arnold, Arnold, Hennessey, Liss & Reba, for plaintiff.

Jack T. Riley, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Robert Strader has brought this diversity action seeking compensatory and punitive damages under a variety of contract and fraud theories of recovery. Plaintiff was hired by defendant Union Hall on November 13, 1972; slightly more than a year later, on November 22, 1973, plaintiff suffered a severe stroke. Plaintiff was able to resume work on a part-time basis on February 7, 1974, and to continue in this capacity through May 24, 1974. During this period defendant Travelers Insurance Companies ("Travelers"), pursuant to a group insurance policy issued to Union Hall, paid for the plaintiff's out-patient physical therapy. On May 24, 1974, defendant Union Hall terminated its employment of plaintiff Strader. Defendant Travelers continued to make payments for plaintiff's out-patient therapy through June, 1974, but made no further payments thereafter.

As a result, plaintiff filed this action against defendants Union Hall and Bagus on October 21, 1975, alleging that the employment contract had been induced fraudulently; that these defendants had breached an oral agreement with plaintiff; and that plaintiff had relied to his detriment on the defendants' representations. On November 15, 1976, plaintiff added a count against defendants Union Hall and Bagus alleging their failure to notify Travelers that his discharge was because of his medical disability caused Travelers to discontinue payments for his therapy. At the same time, plaintiff amended his complaint to include a count against Travelers alleging that it "negligently or willfully or recklessly terminated Plaintiff's medical payments when it had knowledge that Plaintiff was totally disabled while insured by [its] Group Insurance Policy."[1]

The case now is before the Court on defendant Travelers' motion to dismiss or for summary judgment. Specifically, Travelers seeks to dismiss the action insofar as it is based on theories of breach of the duty of good faith and fair dealing, and intentional infliction of emotional harm.[2] In addition,

1. Jurisdiction over plaintiff's claim against Travelers is asserted not on the basis of diversity, but rather, under the principles of "ancillary jurisdiction." Since ancillary jurisdiction generally is viewed as a defendant's doctrine, *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978), the Court construes plaintiff's complaint as invoking the principles of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724–725, 86 S.Ct. 1130, 1137–1138, 16 L.Ed.2d 218 (1966). As the more recent Supreme Court decisions in *Kroger* and *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), suggest, however, the variant of the doctrine advanced in this case— pendent party jurisdiction—is more limited than pendent claim jurisdiction. This is particularly so when the primary basis of federal jurisdiction in the case is the existence of diversity rather than the presence of a federal question. *See Fawvor v. Texaco, Inc.*, 546 F.2d 636, 641 (5th Cir. 1977); *Wood v. Standard Products Co.*, 456 F.Supp. 1098, 1101–1102 (E.D.Va. 1978); *Maltais v. United States*, 439 F.Supp. 540, 545 (N.D.N.Y.1977). However, given the time invested in this action by the Court and the parties, and the fact that a cross-claim has been filed by Travelers against Union Hall under the assumption that the exercise of pendent jurisdiction by this Court is proper, the Court believes it would be unfair to the parties to dismiss Travelers from the action at this late date. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

2. Defendant Travelers does not argue that the complaint fails to state a claim for breach of contract; nor, in the Court's view, could the defendant make such a claim.

Travelers has moved for summary judgment on plaintiff's claim for punitive and consequential damages.

## I. DUTY OF GOOD FAITH AND FAIR DEALING

In *Ledingham v. Blue Cross Plan for Hospital Care*, 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist. 1975), an Illinois court held for the first time that the relationship between a health insurance insurer and a policyholder gives rise to an implied duty of good faith and fair dealing, the breach of which creates both contract and tort liability. Thus, the court noted that although punitive damages generally may not be awarded in an action for breach of contract, *Hayes v. Moynihan*, 52 Ill. 423, 425, 426 (1869); *Ash v. Barrett*, 1 Ill.App.3d 414, 274 N.E.2d 149, 152 (1st Dist. 1971), such damages may be awarded where the breach of this implied duty constitutes tortious interference with a protected property interest of the insured. 330 N.E.2d at 548–549.

The Illinois courts, however, are by no means unanimous in their recognition of this cause of action. In fact, *Ledingham* is the only Illinois court to recognize expressly the tort of breach of the duty of good faith and fair dealing. Courts in two other appellate districts in Illinois have rejected the reasoning in *Ledingham*. *Tobolt v. Allstate Insurance Co.*, 75 Ill.App.3d 57, 30 Ill.Dec. 824, 833, 393 N.E.2d 1171, 1180 (1st Dist.

1979); *Debolt v. Mutual of Omaha*, 56 Ill. App.3d 111, 13 Ill.Dec. 656, 660–661, 371 N.E.2d 373, 377–378 (3d Dist. 1978).[3] The rationale for *Tobolt* and *Debolt* is that the courts should not create by judicial fiat remedies in addition to those already provided legislatively. Both courts observed that section 155 of the Illinois Insurance Code, Ill.Rev.Stat.1975, Ch. 73, para. 767, confers upon an insured the right to recover attorney's fees if the court concludes that the insurer's refusal to pay is "vexatious and unreasonable."[4] These courts considered it significant that *Ledingham* failed to mention this statutory remedy, and that the states which have recognized a right of action for breach of the duty of good faith and fair dealing appear to have no such similar statutory provision. *Tobolt*, 30 Ill. Dec. at 833, 393 N.E.2d at 1180. Accordingly, the courts concluded that it would be inappropriate for the judiciary to supplement this statutory remedial scheme. *Tobolt*, 30 Ill.Dec. at 833, 393 N.E.2d at 1180; *Debolt*, 13 Ill.Dec. at 661, 371 N.E.2d at 378.

It is the task of a federal court, when faced with an unsettled question of state law, to exercise independent judgment and render a decision which it believes that highest court of the state would issue if it were faced with the same question. *Eckenrode v. Life of America Insurance Co.*, 470 F.2d 1, 3 (7th Cir. 1972); 1A, Pt 2 Moore's Federal Practice ¶ 0.309[2] at 3119.[5]

---

**3.** Moreover, in *Urfer v. County Mutual Insurance Co.*, 60 Ill.App.3d 469, 17 Ill.Dec. 744, 376 N.E.2d 1073 (4th Dist. 1978), the court ruled that the plaintiff could not collect punitive damages under this theory. In that case each member of the three judge panel went off in a different direction. One judge held that assuming such an action as breach of the duty of good faith and fair dealing exists, plaintiff had failed to allege facts sufficient to state a claim thereunder; one judge held that Illinois law did not recognize such an action; and the third judge, in dissent, argued that Illinois law recognized such a tort action and that plaintiff had stated a claim for breach of the duty.

At least two other courts have been presented with this question, but have declined to decide it. *Lakeview Trust & Savings Bank v. Fillmore Construction Co.*, 74 Ill.App.3d 755, 30 Ill.Dec. 678, 393 N.E.2d 714 (1st Dist. 1979);

*Florsheim v. Travelers Indemnity Co.*, 75 Ill. App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223 (1st Dist. 1979).

**4.** As amended in 1977, section 155 now enables the insured to recover up to $5,000 in addition to compensatory damages, as well as the full amount of attorney's fees and costs.

**5.** It is recognized that when "a higher federal court has expounded the law of the state on a particular point, a lower court will follow that decision in the absence of an authoritative state decision." 1A, Pt 2 Moore's Federal Practice ¶ 0.309[2] at 3124 n.23. On this basis, it might be argued that the Court is bound by the determination in *Eckenrode* that "insurance contracts are subject to the same implied conditions of good faith and fair dealing as are other

The Court believes that *Tobolt* and *Debolt* represent a more sound interpretation of Illinois law than does *Ledingham*. The primary benefit of the tort theory developed in *Ledingham* is that it enables insured parties to collect punitive damages in what essentially are breach of contract actions, where such damages usually are unavailable.[6] Yet, it is clear that the remedy provided by section 155 is in the nature of a punitive damage remedy. The opinion in *Ledingham* failed even to mention this provision, much less explain why an additional remedy for insured parties was necessary. For these reasons, the Court does not believe that the Illinois Supreme Court would recognize an independent tort action for breach of the duty of good faith and fair dealing. Thus, the Court will grant defendant Travelers' motion to dismiss the action for failure to state a claim for relief insofar as it is based upon a theory of a duty of good faith and fair dealing. Fed.R.Civ.P. 12(b)(6).

## II. INTENTIONAL INFLICTION OF EMOTIONAL HARM

 The intentional infliction of emotional harm is a well established tort under Illinois law. *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157, 165 (1961). Thus, the only question before the Court is whether, assuming the truth of the plaintiff's allegations, plaintiff has stated a claim for intentional infliction of emotional harm. Under Illinois law, a plaintiff seeking recovery under this theory must allege (1) that the conduct by defendant was extreme and outrageous; (2) that he has suffered severe emotional harm; (3) that the conduct by defendant was intentional, or so reckless that the defendant knew severe emotional distress was substantially certain to result;

and (4) actual and proximate causation of emotional distress by defendant's conduct. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976); *Debolt*, 13 Ill.Dec. at 658, 371 N.E.2d at 375. Moreover, the extreme and outrageous conduct may arise "from an abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests. *Public Finance Corp.*, 4 Ill.Dec. at 654, 360 N.E.2d at 767.

Although the allegations in plaintiff's complaint are sketchy, he sets forth in his brief directed to the motion the following scenario of Travelers' conduct after his association with Union Hall came to an end. In June, 1974, plaintiff's wife contacted a claims agent to discuss continuation of payments to her husband. The agent told Mrs. Strader that her husband was ineligible for payments since he no longer worked at Union Hall. When Mrs. Strader offered to provide evidence that her husband had been totally disabled at the time he left the employ of Union Hall, the agent told her not to submit the information. A friend of the Strader family who sought to intercede on plaintiff's behalf fared little better. In response to a request explaining the reason for the termination of benefits, Travelers stated that any time an employee was terminated—for whatever reason—policy benefits were terminated as well.

The plaintiff alleges that this information was false, and that since then plaintiff has learned that benefits may continue after termination of employment if the employee is totally disabled at the time of termination. Strader claims that Travelers failed to conduct an investigation to determine whether in fact he was disabled at the time of his discharge; indeed, he alleges that

---

contracts." 470 F.2d at 5. In *Eckenrode*, however, the Seventh Circuit addressed the issue of recovery for intentional infliction of emotional harm under Illinois law. It was in that context that the court found an implied duty of good faith and fair dealing; nowhere in the opinion is it suggested that breach of the duty would give rise to a separate tort action in which

punitive damages would be available. Thus, the Court does not consider *Eckenrode* controlling on this issue.

6. *See e. g. Hayes v. Moynihan*, 52 Ill. 423, 425, 426 (1869); *Ash v. Barrett*, 1 Ill.App.3d 414, 274 N.E.2d 149, 152 (1st Dist. 1971).

Travelers' handling of his case was so negligent and reckless that his file actually was lost. As a result of the termination of payments by Travelers, plaintiff allegedly was unable to obtain physical therapy for more than a year and one half. During this period his mental—as well as physical—condition allegedly deteriorated seriously. Because he had lost hope for the future, his mental state became one diagnosed as moderately severe depression.

■ These allegations set forth the elements necessary to sustain this cause of action. This is not a case such as *Tobolt*, 30 Ill.Dec. at 829, 393 N.E.2d at 1176, wherein the plaintiff simply failed to allege facts which could constitute outrageous conduct; or *Ledingham*, 330 N.E.2d at 549, wherein the defendant insurer's refusal to pay was made in good faith on the basis of an investigation. Here, the defendant insurer allegedly failed to investigate the merits of plaintiff's claim, and misrepresented the nature of his insurance coverage. This is precisely the type of abusive behavior by an entity with the power to affect the interests of another that gives rise to a finding of extreme and outrageous conduct. *See Eckenrode*, 470 F.2d at 3; Restatement, Second, Torts § 46, Comment e at 74. The emotional distress allegedly suffered by plaintiff is more than mere fright or worry. Plaintiff herein allegedly was a very sick man, dependent upon the insurance benefits for the continuation of his rehabilitation regimen. The unwarranted termination of those benefits no doubt would be severely distressing to a reasonable man in the position of the plaintiff. Moreover, as alleged, the conduct of Travelers clearly states a claim for reckless conduct. Since this conduct arose in the context of an insurance policy where the "very risks insured against presuppose that . . . the beneficiary might be in difficult circumstances," *Eckenrode*, 470 F.2d at 5, Travelers knew or should have known that severe distress was substantially certain to result. Finally, it is clear that plaintiff's allegations attribute his severe

mental distress to the conduct of Travelers. Thus, the Court believes that the foregoing facts are sufficient to state a claim for intentional infliction of emotional harm. For that reason, defendant's motion to dismiss the claim for intentional infliction of emotional harm is denied.[7]

### III. PUNITIVE AND CONSEQUENTIAL DAMAGES

■ As outlined above, plaintiff proceeds in this action on the dual theories of breach of the insurance contract and intentional infliction of emotional harm. Because the Court finds that plaintiff cannot collect punitive damages under either theory, defendant's motion for summary judgment on the punitive damage claim is granted.

■ In recognizing a cause of action based on intentional infliction of emotional harm, the Illinois Supreme Court in *Knierim* limited the available recovery to compensatory damages:

> We believe . . . that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive.

174 N.E.2d at 165. Subsequent decisions have reaffirmed this limitation on damages recoverable for intentional infliction of emotional harm. *See Ledingham*, 330 N.E.2d at 549; *Eckenrode*, 470 F.2d at 5. Thus, it is beyond question that punitive damages are unavailable as a remedy for this tort.

With respect to plaintiff's breach of contract theory, it is the general rule in Illinois that punitive damages are unavailable. *See* note 7, *supra*. This rule, however, yields "in exceptional cases for breach of contract when the breach amounts to an independent willful tort." *Ash v. Barrett*, 1 Ill. App.3d 414, 274 N.E.2d 149, 152 (1st Dist. 1971). Illinois courts, however, appear to

---

**7.** In so ruling, the Court expresses no view as to the merits of plaintiff's case.

have limited these "exceptional" cases to circumstances involving fraudulent inducement. Teeple, *When, If Ever, Are Punitive Damages Recoverable In An Illinois Contract Action*, Ill.Bar J. 152, 153–154 (November, 1976). It is likely that this reluctance to find exceptional cases was a factor underlying the *Ledingham* court's decision to create an alternative method for obtaining punitive damages. In any event, the Court does not consider the allegations herein to be of the sort which require the availability of punitive damages as a potential remedy.[8]

 Finally, defendant seeks summary judgment on the issue of consequential damages. In support thereof, plaintiff cites a passage from *Debolt* which limits recovery for breach of an insurance contract to that which was due under the terms of the policy. 13 Ill.Dec. at 660, 371 N.E.2d at 377. The general rule in Illinois, however, is that reasonably foreseeable consequential damages may be recovered for breach of contract. *Kalal v. Goldblatt Brothers, Inc.*, 53 Ill.App.3d 109, 11 Ill.Dec. 120, 123, 368 N.E.2d 671, 674 (1st Dist. 1977). Inasmuch as the court in *Debolt* cited no authority for the proposition that consequential damages are not recoverable for breach of an insurance contract, the Court believes it inappropriate to rely on that opinion to deny plaintiff the right to seek such damages. Nor can the defendant claim that consequential damages as such are unavailable as a remedy for intentional infliction of emotional harm. I.L.P. Damages § 34 at 381–382. Thus, defendant's motion for summary judgment on the consequential damage claim is denied.

To summarize, defendant Travelers' motion to dismiss the claim insofar as it is based on breach of the duty of good faith and fair dealing is granted. Defendant's motion to dismiss the claim for intentional infliction of emotional harm is denied. Thus, plaintiff may proceed against Travel-

ers on this latter theory as well as on the theory of breach of contract. Defendant's motion for summary judgment on the claim for punitive damages is granted; its motion for summary judgment on the claim for consequential damages is denied. It is so ordered.

---

8. Indeed, it is significant that these facts give rise to a contract claim and a claim for intentional infliction of emotional harm, for both of which punitive damages are unavailable.

*Knierim*, 174 N.E.2d at 165. Thus, a contrary ruling would permit the plaintiff to seek punitive damages merely by changing the label which he places on the facts alleged.